IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

SOPHIA POWERS

     Plaintiff,                                NO.

                                                    HON.

Zausmer, P.C.,

     Defendant.

_____

CARLA D. AIKENS, P.L.C
CARLA D. AIKENS (P69530)
AUSTEN J. SEAROUSE (P84852)
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
carla@aikenslawfirm.com
austen@aikenslawfirm.com
_____

## **COMPLAINT**

Plaintiff, by and through her attorneys, asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

     SOPHIA POWERS, by and through her attorney, CARLA D. AIKENS, P.L.C., submit the following Complaint against DEFENDANT Zausmer, P.C. (hereinafter referred to as "Zausmer" or "Defendant").

1

## JURY DEMAND

COMES NOW PLAINTIFF, SOPHIA POWERS, and hereby makes her demand for trial by jury.

## JURISDICTION

1.     Plaintiff SOPHIA POWERS was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2.     Defendant ZAUSMER, P.C., is a for profit corporation with a registered address of 36111 Schoolcraft Road, Livonia, Michigan 48150, in Oakland County, and conducts regular and systemic business in the State of Michigan.

3.     All relevant actions giving rise to this complaint took place in Wayne County in the State of Michigan.

4.     Jurisdiction of this Court is invoked pursuant to Title VII, 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331, the Civil Rights Act of 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

6.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## **FACTUAL ALLEGATIONS**

7.     At all times relevant to this Complaint, Plaintiff was a member of a protected class due to her status as an African American woman.

8.     Ms. Powers began working on or about November 8, 2021, for the Defendant as a Legal Assistant/Secretary.

9.     On or about November 15, 2021, Joann Cutler came to Ms. Powers' desk and spoke to Ms. Powers in a demeaning tone.

10.     Cutler was an employee or agent of Defendant at all times relevant to this Complaint.

11.     Ms. Powers immediately informed Janetta Ksar, Plaintiff's direct supervisor, via email about the interaction, which Ms. Powers believed was at least partially caused by Ms. Powers' race.

12.     During this time, Ms. Powers received little to no training on how to operate within her role and in accordance with the Defendant's practices, despite requests for the same.

13.     Upon information and belief, employees in her position of other races received training when starting their roles.

14.     On December 10, 2021, Ms. Powers contacted Ms. Ksar via email about Ms. Powers' performance on the job.

3

15.    Ms. Powers, due to the lack of training, was asking questions and for others to review her work to ensure accuracy and adherence to policy.

16.    Upon information and belief, Ms. Ksar contacted Christopher A. Chesney, Spencer J. Chauncey, Joanne Cutler, Pam Black, and Madelynn Pokrzywinski for feedback.

17.    Upon information and belief, each person contacted did not accurately or fairly review the performance of Ms. Powers.

18.    On or about January 4, 2022, Plaintiff emailed Beth Lockwood with her paralegal certificate due to a job posting Defendant had recently made available.

19.    Plaintiff applied to this position in part because of the treatment from Ms. Ksar and her team involving harassing, degrading, and/or humiliating Ms. Powers.

20.    Ms. Lockwood improperly denied Ms. Powers from presenting her application to the position, due at least in part to Plaintiff's race.

21.    Less than two weeks later, on January 11, 2022, Ms. Lockwood emailed Ms. Powers, with Ms. Ksar copied on the email, regarding one hour of overtime Ms. Powers worked each day during the pay period ending on December 31, 2021.

22.    Upon information and belief, Plaintiff was accused of taking unapproved overtime, despite informing Ms. Ksar about the extra time going to assisting others, as well as for Ms. Powers' own workload.

23.    Upon information and belief, Ms. Ksar told Plaintiff that the team was behind prior to Plaintiff's start date and that overtime would be approved until the team caught up.

24.    Ms. Powers operated under that information when she worked overtime hours.

25.    No one informed Ms. Powers about a change in status regarding overtime hours.

26.    Defendant informed Ms. Powers that she would not earn time and a half for overtime until she worked at least forty-four hours or more in a week.

27.    Ms. Powers never received any guidance on the change in overtime until Ms. Ksar and Ms. Lockwood both chastised and humiliated her due to working overtime.

28.    Upon information and belief, Ms. Ksar stated "You shouldn't be working extra on any day – and I'm, confused as to why you are doing this. Your work schedule is 8:30-4:30pm with a half hour lunch. Please ensure you are working only during those times. If you need to stay late to finish something, you need approval."

29.    On or about January 14, 2022, Ms. Lockwood approached Ms. Powers during her lunch break, while Ms. Powers was on her cell phone.

30.    Ms. Lockwood interrupted the call to inform Plaintiff the particular kitchen she was in was for "clients only."

31.    Plaintiff and others had been using that kitchen since she began working with the Defendant.

32.    Plaintiff believes that Ms. Lockwood came to the kitchen to harass Plaintiff.

33.    On or about January 18, 2022, Spencer Chauncey emailed Ms. Powers, angry about a hearing that was missing from the calendar.

34.    Upon information and belief, the issue Mr. Chauncey emailed about fell under the responsibilities of Madelynn Pokrzywinski, not Ms. Powers.

35.    Further, Ms. Pokrzywinski told Ms. Powers not to email Ms. Pokrzywinski about the e-filed notices.

36.    Upon information and belief, Ms. Ksar scolded Ms. Powers for "altering" the practices and procedures rather than Ms. Pokrzywinski.

37.    This tension built over the coming days as Ms. Ksar continued to harass Plaintiff.

38.     Ms. Pokrzywinski and Ms. Black had conversations in front of other coworkers about Plaintiff's restroom habits, music taste, time clocking, and other such topics.

39.     Both Ms. Pokrzywinski and Ms. Black repeatedly harassed and embarrassed Ms. Powers.

40.     Ms. Powers reported this conduct again to Ms. Ksar, on or about January 20, 2021, and was subsequently terminated.

41.     Plaintiff filed a charge with the EEOC, No. 471-2022-01696, and received a Right to Sue Letter on September 27, 2023.

42.     Based upon the charge and the receipt of that Right to Sue Letter, this lawsuit followed.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

42.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

43.     42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

44.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

45.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

46.     Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful racial discrimination.

47.     The retaliation by Defendant that Plaintiff experienced included her repeated prohibition on working overtime hours, which broke the contract between the parties.

48.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

49.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

50.   But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including her denial of overtime opportunities.

51.   As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
### RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

52.   Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

53.   42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

54.    Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

55.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

56.    The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

57.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

58.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

59.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of

earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT III
### RETALIATION IN VIOLATION OF TITLE VII

60.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

61.     At all material times, Defendants was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

62.     A respondeat superior relationship existed because agents of Defendants had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

63.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

64.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff filed her direct supervisor about treatment she endured as laid out in the statement of facts.

65.    Defendants, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to multiple agents of Defendants.

66.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, and terminated her position.

67.    Defendants and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

68.    Plaintiff notified Defendants and its agents of the unwelcomed conduct and communication; however, Defendants failed to remedy the same.

69.    As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

70.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

71.    Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT IV**</u>
**RETALIATION IN VIOLATION OF THE ELCRA**

72. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

12

73. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

74. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

75. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

76. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when she brought multiple complaints about the treatment she received as well as the lack of training.

77. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issues to multiple decision makers and/or agents of the Defendant.

78. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included repeated and consistent denial of overtime.

79. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

80. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

81. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

83. Plaintiff requests relief as described in the Prayer for Relief below.

<u>**COUNT V**</u>
**HARRASMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")**

84.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

85.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

86.    Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's skin color.

87.    A respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting

Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

88.     Moreover, a respondeat superior relationship existed because Defendant and its agents had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct those Plaintiffs' daily work activities, as alleged in the statement of facts.

89.     Plaintiff is an African-American woman, and, as a result, is a member of a protected class pursuant to Title VII.

90.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class, as set forth in the facts section above..

91.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

92.     Plaintiff notified Defendant, through its agents, of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication, including but not limited to subjecting her to worse treatment than her colleagues, on the basis of her race.

93.     The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT VI
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

94.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

95.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

96.     Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

97.     Plaintiff is an African American woman, and, as a result, is a member of a protected class pursuant to ELCRA.

98.     Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

99.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

100.   The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an

intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

101.   As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

102.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII: FAIR LABOR STANDARDS ACT

103.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

104.   Defendant was Plaintiff's employer as defined by the Fair Labor Standards Act (FLSA). 29 USC 302(d).

105.   Plaintiff was an employee as defined by the FLSA. 29 USC 203(e)(1).

106.   Plaintiff was engaged in employment with Defendant as defined by 29 USC 203(g).

107.   The burden is on Defendant to keep accurate records of the hours Plaintiff worked and the wages Plaintiff was paid.

108.   At all times Plaintiff attended to her duties while on Defendant's premises.

109.   Defendant deducted time from the amount Plaintiff was owed for short break periods in violation of 29 CFR 785.15.

110.   Plaintiff is not an exempt employee as defined by the FLSA.

## OVERTIME WAGES

111.   Defendant failed to pay Plaintiff the required one and one-half times the amount of her hourly wage for every hour worked over 40 hours in a week in violation of 29 USC 207(a)(1).

112.   Plaintiff was not a salaried employee exempting Defendant from paying him overtime wages. 29 CFR 541.602.

113.   Plaintiff was never paid more than $684.00 per week, or $35,568.00, exempting Defendant from paying Plaintiff overtime wages. 29 CFR 541.

114.   Plaintiff were never paid any bonuses exempting Defendant from paying Plaintiff's overtime wages. 29 CFR 541.602(a)(3).

115.   Defendant has the burden of establishing exemptions for not paying Plaintiff's overtime wages.

116.   Defendant is not exempted from paying Plaintiff under the learned professional employee exception pursuant to 29 CFR 541.300(a).

117.   Defendant is not exempted from paying Plaintiff under the executive employee exception pursuant to 29 CFR 541.100(a).

118.   Defendant is not exempted from paying Plaintiff under the highly compensated employee exception pursuant to 29 CFR 541.601(a).

119.   Defendant is not exempted from paying Plaintiff under the computer-employee exception pursuant to 29 CFR 541.400(b).

### COUNT V: MICHIGAN WAGES AND FAIR BENEFITS ACT

120.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

121.   Plaintiff was an employee because they were individuals employed by an employer.

122.   Defendant was Plaintiff's employer because Defendant is an individual, a partnership, an association, or corporation, who employs one or more individuals.

123.   Defendant failed to pay Plaintiff on a timely basis as established by MCL 408.472.

124.   Defendant failed to pay Plaintiff all wages earned and due at the time of her separation from employment.

125.   Defendant failed to maintain records for Plaintiff which indicated Plaintiff:

    a.   Total basic rate of pay,

    b.   Total hours worked in each pay period,

126.   On pay day, Defendant failed to provide Plaintiff with:

a.   A statement of the hours worked by the employee,

127.   Defendant is required to maintain the above referenced records for not less than 3 years. Plaintiff is entitled to the following damages:

a.   Attorney's fees,

b.   Costs and expenses of litigation

c.   Payment of unpaid minimum wages,

d.   Payment of unpaid overtime wages,

e.   Interest on all unpaid wages,

f.   Additional liquidated damages equal to the amount of all established damages,

g.   Damages for emotional pain, suffering, and humiliation associated with being under paid and working for less than one's true value,

h.   Punitive damages,

i.   Fringe benefits due to Plaintiff,

j.   A penalty at the rate of 10% annually on the wages and fringe benefits due, and

k.   Exemplary damages of not more than twice the amount of the wages and fringe benefits.

## COUNT VIII: IMPROVED WORKFORCE OPPORTUNITY WAGE ACT

128.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

129.   Plaintiff is employees of Defendant because Plaintiff is over 16 years of age, Plaintiff was given wages by Defendant, and forced to perform duties and tasks at a premises of Defendant, which is a fixed site that is designated by Defendant.

130.   Defendant was Plaintiff's; employer because Defendant is a person, firm, or a corporation who employs two or more employees at any one time within a calendar year.

131.   Defendant failed to pay Plaintiff pursuant to the hourly wage established by IWOWA which is set at $9.65.

132.   Defendant failed to pay Plaintiff 1-1/2 times her regular hourly rate for hours Plaintiff worked during their workweek in excess of 40 hours.

133.   Plaintiff was not a trainee, apprentice, learner, or person with a disability who was unable to meet production standards.

134.   Plaintiff did not work for gratuities or tips.

135.   Plaintiff does not come under any of the exempted employment arrangements in MCL 408.940.

136.   Defendant failed to furnish Plaintiff with:

a.   A statement of the hours worked,

b.  The breakdown of the wages paid to the employee,

c.  The listing of deductions made each pay period, and

d.  A copy of IWOWA and regulations and orders promulgated under this act posted in a conspicuous place in the workplace that is accessible to Plaintiff and other employees.

137.  As a result of the above, Plaintiff is entitled to the following damages:

a.  Attorney's fees,

b.  Costs and expenses of litigation,

c.  Payment of unpaid minimum wages,

d.  Payment of unpaid overtime wages,

e.  Interest on all unpaid wages,

f.  Additional liquidated damages equal to the amount of all established damages,

g.  Damages for emotional pain, suffering, and humiliation associated with being under paid and working for less than one's true value, and

h.  Punitive damages.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff, SOPHIA POWERS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1.     Compensatory damages in whatever amount to which Plaintiff is

entitled;

2.     Exemplary damages in whatever amount which Plaintiff is entitled;

3.     An award of lost wages and the value of fringe benefits, past and

future;

4.     An award of interest, costs, and reasonable attorney fees; and

5.     An order awarding whatever other equitable relief appears appropriate

at the time of final judgment.


Dated:  December 26, 2023

Respectfully Submitted,

/s/ Austen J. Shearouse
Carla D. Aikens (P69530)
Austen J. Shearouse (P84852)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
austen@aikenslawfirm.com