UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SOPHIA POWERS,** Plaintiff, vs. **ZAUSMER, P.C.,** Defendant. | 2:23-CV-13274-TGB-CI HON. TERRENCE G. BERG **ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT TERMS (ECF NO. 9)** **AND DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT TERMS (ECF NO. 7)** |

Sophia Powers briefly worked as a legal assistant for a law firm before she was terminated because of alleged discrimination. As the Plaintiff in this lawsuit, she sued Zausmer, P.C., her employer, and the parties reached an early settlement. Unfortunately, for reasons explained below, a dispute arose as to what was required by the terms of the settlement. So both parties have now filed Motions to Enforce Settlement Terms filed by Plaintiff Sophia Powers, ECF No. 7, and Defendant Zausmer, P.C., ECF No. 9. Each side is seeking to enforce the settlement terms they agreed upon following mediation. The motions have been fully briefed. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of these matters.

Accordingly, the Court will resolve the present motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons stated below, Defendant's Motion to Enforce Settlement Terms will be **GRANTED** and Plaintiff's Motion to Enforce Settlement Terms will be **DENIED**.

## I. BACKGROUND

Plaintiff Sophia Powers was employed as a legal assistant with Defendant Zausmer, P.C. from November 8, 2021 until January 20, 2022, when her employment was terminated by Defendant. Complaint ¶¶ 8, 40, ECF No. 1. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a right to sue letter on or about September 27, 2023. *Id.* ¶ 41 This required Plaintiff to file suit in federal court within 90 days, or by December 26, 2023. On December 26, 2023, Plaintiff filed this lawsuit, asserting claims for race discrimination, retaliation, and harassment under federal and state law, and claiming compensation under federal and state wage laws. ECF No. 1.

On Saturday, March 2, 2024, the parties and their attorneys participated in facilitation with retired Wayne County Circuit Court Judge Cynthia Stephens. The parties reached a settlement and confirmed that settlement by agreeing to a Term Sheet prepared by Judge Stephens. ECF No. 10-1 (Sealed). The Term Sheet states that Defendant is to pay Plaintiff a confidential amount, and that Plaintiff

"agrees to release any and all claims against" Defendant. *Id*. The parties confirmed their clients' agreements to the outlined terms, and that those terms would be included in a formal settlement agreement. ECF No. 9-3.

However, two days later, Plaintiff's counsel emailed defense counsel asking for "additional consideration" for the settlement—to also have the $650 mediation fee and $450 complaint filing fee included in the settlement agreement payment to Plaintiff. ECF No. 9-4. Defense counsel responded that same day that it was "not willing to re-negotiate the settlement." ECF No. 7-3. Defense counsel then sent Plaintiff's attorney a draft "long form settlement agreement" for review and comment. ECF No. 9-5. This draft settlement agreement included a general release of all claims Plaintiff "has or may have" against Defendant, "including, but not limited to" alleged violations of a number of listed federal and state statutes. ECF Nos. 10-2 (Sealed). This list of statutes included the claims under the Age Discrimination in Employment Act of 1967 ("ADEA"). *Id*.

In an email, Plaintiff's counsel asserted that "[t]he language in [the draft settlement agreement] looks like you took out the revocation provision and the 21 days to review. [Plaintiff] is over the age of 40 and you have waiver of ADEA claims in here so you need to add those to the draft, per the ADEA statute." ECF No. 7-5. Defendant responded that "[l]isting the ADEA statute was a mistake, so please remove it from the list of statutes in the release section." *Id*.

3

Later that day the parties exchanged additional emails disagreeing as to whether the settlement agreement must include a release of age discrimination claims under the ADEA, and thus whether it needed to include terms complying with the Older Workers' Benefit Protection Act ("OWBPA"). ECF No. 9-5. Under the OWBPA, a worker's waiver of rights under the ADEA is not considered "knowing and voluntary" unless the worker receives at least twenty-one days to consider the agreement and seven days to revoke acceptance after execution. *See* 29 U.S.C. § 626(f)(1)(F), (G).

On March 12, 2024, defense counsel sent an email to Plaintiff's counsel stating:

> Attached is an updated settlement agreement. We corrected other mistakes in the agreement which sometimes occurs when tweaking a prior agreement, and we attempted to tighten up some duplicative provisions. I have attached both a redlined copy for your review and a clean copy for your client's signature.
>
> As you have had the initial settlement agreement since March 4, please have your client sign the attached revised settlement agreement and return to us with the necessary tax forms by March 14. Please also insert the dollar amounts for the two settlement checks.
>
> In closing, the parties have a signed enforceable term sheet. If the signed settlement agreement and release is not received in our office by March 14, please consider this as a request for concurrence in a motion to enforce the settlement where Zausmer will ask the court to deduct all the attorneys' fees it

has incurred in handling this issue from the total settlement payment as a sanction.

ECF Nos. 9-7, 10-3 (Sealed), 12-3 (Sealed).

Plaintiff's counsel responded that same day that she "agree[d] that they signed an enforceable term sheet[.]"ECF No. 9-7. She contended however that defense counsel was "trying to deprive [Plaintiff] of her rights under the ADEA" by not including "the language including revocation" in the settlement agreement. *Id.*

Three days later, Plaintiff filed her Motion to Enforce Settlement Terms. ECF No. 7. Plaintiff requests that the Court "enforce the [settlement] agreement, which must include the language required by the ADEA and not permit Defendant to deprive Plaintiff of her rights under the statute." *Id.* Plaintiff argues that a release of ADEA claims must be "knowing and voluntary" and requires "a period of at least 21 days within which to consider the agreement" and a period of at least seven days after execution of the agreement for the Plaintiff to revoke the agreement. *Id.* (citing 29 U.S.C. § 626(f)(1)(F) and (G).) Plaintiff further seeks her costs for bringing the motion. *Id.*

Defendant then filed its own Motion to Enforce Settlement Terms. ECF No. 9. Defendant argues that the parties agreed to the essential terms of the settlement but that Plaintiff now wants to revoke her acceptance of those terms and seek more money by claiming that the settlement terms must include ADEA claims, which would give her the

5

right to revoke her release of all claims. *Id.* Defendant argues that Plaintiff cannot use a claim that she cannot bring (because she was 39 years old when terminated and has not timely asserted an age discrimination claim) to revoke a settlement that has been reached on non-ADEA causes of action. *Id.* Defendant requests that the Court order Plaintiff to sign the settlement agreement and release that conforms to the terms agreed upon by the parties, reduce the settlement amount by the costs and fees incurred by Defendant in bringing the instant motion, and dismiss Plaintiff's Complaint with prejudice. *Id.*

The motions have been fully briefed.

## II. LEGAL STANDARD

The Court of Appeals for the Sixth Circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it. *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001); *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000); *see also Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."). Before entry of judgment or dismissal in a case, no separate basis for jurisdiction is required for the court to enforce the settlement agreement. *Jaynes v. Austin*, 20 F. App'x 421, 423 (6th Cir. 2001) (citing *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976)). Courts

may enforce a settlement agreement "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973); *see also Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 442 (6th Cir. 2005). Nevertheless, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms. The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154 (internal citations omitted).

Questions regarding the formation and enforceability of settlement agreements are governed by state contract law. *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 401 n. 2 (6th Cir. 2014); *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). In Michigan, "[b]efore a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed. Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 770 (Mich. App. 2006) (internal citations and quotation marks omitted).

"As a general rule, settlement agreements are 'final and cannot be modified.'" *Clark v. Al-Amin*, 872 N.W.2d 730, 736 (Mich. App. 2015) (quoting *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. App. 2011)). Thus,

7

"a party cannot void a settlement agreement merely because he has had a change of heart, nor can he do so merely because his assessment of the consequences of the settlement was incorrect." *Id.* (cleaned up).

### III. DISCUSSION

Both Plaintiff and Defendant agree that the parties reached a valid settlement agreement in this case with all material terms memorialized in the Term Sheet. ECF No. 7, PageID.36 ("Plaintiff agrees that the parties entered into an enforceable settlement agreement whose terms were memorialized in the Term Sheet and original draft of the agreement."); ECF No. 9, PageID.70 ("After negotiations, the parties settled the case, and the settlement was confirmed by way of a terms agreement, which was acknowledged in writing by Plaintiff and her attorney."). *See also* ECF Nos. 9-3, 10-1 (Sealed). Defendant agreed to pay Plaintiff a confidential amount and in return Plaintiff agreed to release any and all claims against Defendant. This Court has the inherent power to enforce the settlement agreement that was agreed to by the parties. *Therma-Scan*, 217 F.3d at 419; *Brock*, 841 F.2d at 154; *Graley v. Yellow Freight Sys., Inc.*, No. 98-4166, 2000 WL 799779, at *6 (6th Cir. June 14, 2000) ("When the parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement.").

A review of the record discloses that Plaintiff appears to be having second thoughts about the terms of the settlement to which she agreed,

8

first asking to increase the settlement amount by adding Plaintiff's costs of filing the complaint and mediation, and then, when Defendant said no, arguing that the parties' settlement agreement must include a provision granting her 21 days to review the agreement and seven days to revoke it to address her rights under the ADEA. Defendant argues that Plaintiff should not be allowed to use a non-viable ADEA claim, which contains a revocation of rights, as a pretext for disavowing the terms of the agreed settlement to release non-ADEA claims. The Court agrees.

The OWBPA, which became effective October 16, 1990 as an amendment to the ADEA, was enacted to clarify the conditions under which an employee may waive his or her right to bring an ADEA claim in exchange for a severance or settlement agreement. *Parsons v. Pioneer Seed Hi-Bred Int'l, Inc.,* 447 F.3d 1102, 1104 (8th Cir.2006) (citing *Long v. Sears Roebuck & Co.,* 105 F.3d 1529, 1534 (3d Cir.1997)). The OWBPA "imposes specific requirements for releases covering ADEA claims." *Oubre v. Entergy Ops., Inc.*, 522 U.S. 422, 424 (1998). Specifically, waiver must be "knowing and voluntary," which requires "at a minimum" that, inter alia, "the individual is advised in writing to consult with an attorney prior to executing the agreement" and "the individual is given a period of at least 21 days within which to consider the agreement" and seven days to revoke it. 29 U.S.C. § 626(f)(1)(E)–(G). If a release "[does] not comply with the OWBPA's stringent safeguards, it is unenforceable against [the

9

employee] *insofar as it purports to waive or release her ADEA claim[(s)]."* *Oubre*, 522 U.S. at 427–28 (emphasis added).

Thus, Congress adopted the OWBPA "to ensure that workers did not carelessly waive a *potential* ADEA claim." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 375 (5th Cir. 2002) (emphasis added). However, as another court in this District explained, "a plaintiff cannot be characterized as 'carelessly' waiving an ADEA claim where they did not and could not in the future, bring an ADEA claim." *Vensor v. General Motors, LLC*, No. 22-10722, 2023 WL 6519269, at *3 (E.D. Mich. Oct. 5, 2023) (Behm, J.). Here, a review of the Term Sheet shows that the parties did not include a release of an ADEA claim, or any language requiring a 21-day review period or seven-day revocation period. Such an omission makes sense because on the facts before the Court, it is clear that Plaintiff never had the statutory right to bring a claim against Defendant under the ADEA and thus never had a "*potential*" ADEA claim that could be waived. Plaintiff was 39-years-old when she was terminated, and thus was not, as a matter of law, part of the protected class entitled to bring a claim under the ADEA. *See Arucan v. Cambridge E. Healthcare/Sava SeniorCare LLC*, 347 F. Supp. 3d 318, 338 (E.D. Mich. 2018) (Michelson, J.) ("[Plaintiff] was only 39 years old on the date she was terminated by defendants. Thus, plaintiff cannot make out a prima facie case of discrimination under the ADEA because she was under 40 years old on

10

the date she was terminat[ed].") (internal record citation omitted), *aff'd*, 763 F. App'x 415 (6th Cir. 2019). These facts are not in dispute.

Plaintiff did not plead a claim under the ADEA in her Complaint, *see* ECF No. 1, and in any event failed to do so within 90 days of receiving her right to sue letter, as required by the ADEA. 29 U.S.C. § 626(e) (providing that a civil action must be brought "within 90 days after the date of receipt of such notice."). Consequently, even if Plaintiff could allege an ADEA claim against Defendant (which she cannot), she would nevertheless be barred from bringing such a claim. Because Plaintiff did not bring an ADEA claim against Defendant, and is statutorily barred from bringing such a claim by the express provisions of the ADEA, there is no reason to include the requirements of the OWBPA in the parties' settlement agreement and release.[1]

---

[1] Further, the OWBPA's revocation provision *only* applies to ADEA claims (which Plaintiff cannot bring as a matter of law), and thus would not entitle Plaintiff revoke acceptance of the entire settlement agreement as to her non-ADEA claims. *See Vensor*, 2023 WL 6519269, at *3 n.2 ("[E]ven if a party failed to comply with the OWBPA's safeguards, the settlement agreement may remain in effect 'with respect to all but Plaintiff's ADEA claims.'") (citation omitted); *see also, e.g., Harmon v. Wis. Reg'l Training P'ship*, 833 F. App'x 1, 2–3 (7th Cir. 2020) (holding plaintiff's reliance on OWBPA was misplaced because she "never claimed (in [] [the] lawsuit or in an administrative charge) discrimination based on age, and at the time the settlement was reached, any prospective charge or lawsuit would have been untimely," and she therefore had no claim under the ADEA to release). Likewise, Plaintiff here has no claim under the ADEA to release.

As discussed above, the parties entered into a valid settlement agreement memorialized in a written Term Sheet. "[S]ettlements are favored by the law, and therefore will not be set aside, except for fraud, mutual mistake, or duress." *Clark*, 872 N.W.2d at 736 (citing *Streeter v. Mich. Consol. Gas Co.*, 65 N.W.2d 760, 764 (Mich. 1954)). Plaintiff has failed to demonstrate any right to revoke her acceptance of the agreement, or to include the OWBPA-required review and revocation language in the settlement agreement. She cannot rely upon the provisions of a statute for a claim she did not—and cannot—bring to avoid release of the claims she did bring. And she does not suggest any other necessary changes to the draft settlement agreement and release provided by Defendant. Therefore Plaintiff's request to enforce a settlement agreement "which includes a release of all claims including ADEA claims for which a 21-day review and 7-day revocation period would apply" is **DENIED**. Defendant's request to order Plaintiff to sign a settlement agreement that conforms to the Term Sheet agreed to at mediation and requires the dismissal of all viable claims is **GRANTED**.

### IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Enforce Settlement Terms, ECF No. 9, is **GRANTED**, and Plaintiff's Motion to Enforce Settlement Terms, ECF No. 7, is **DENIED.**

12

Plaintiff is **ORDERED** to execute the settlement agreement and release provided by Defendant that comports with the settlement terms agreed to by the parties.

The parties are **FURTHER ORDERED** to provide to the Court a proposed stipulated order of dismissal with prejudice after the settlement agreement is executed no later than **30 days** from the date of this Order.

The Court will not exercise its discretion to award costs to either party at this time.

This is not a final order and does not close the case.

**IT IS SO ORDERED.**

Dated: March 11, 2025          /s/Terrence G. Berg
                                         HON. TERRENCE G. BERG
                                         UNITED STATES DISTRICT JUDGE